IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN SACA,

   Plaintiff,         No. CIV S-06-2818 MCE EFB

 vs.

J.P. MOLYNEUX STUDIO LTD., et al.,

               ORDER

   Defendants.
_____/

This case was before the undersigned on December 18, 2007, for hearing on plaintiff's expedited motion for a protective order. Suzanne M. Alves appeared as plaintiff's counsel and I. Hooshie Broomand appeared as defense counsel. For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

**I. BACKGROUND**

Because this case has previously been before the court on no fewer than seventeen other discovery motions in this relatively simple breach of contract suit and countersuit, the court will not rehash here the factual background of this litigation. Presently before the court is plaintiff's motion for an order protecting from disclosure categories of financial information similar to that which he previously obtained from defendants.

////

1

On November 2, 2007, defendants served a deposition notice on plaintiff, setting his deposition for December 4, 2007. Appended to the notice were several requests for production of documents to be produced at the deposition. *See* Fed. R. Civ. P. 30(b)(2) (notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition).

On November 20, 2007, the parties were before the court on a different discovery motion, and at the hearing, plaintiff requested and was granted a two-week extension of time to respond to discovery. Plaintiff did not divulge whether the extension pertained to the document requests appended to the discovery notice, nor whether an extension would affect their timely production at the deposition. In any event, the parties agreed to continue plaintiff's deposition to December 11, 2007, at which time plaintiff did produce some responsive documents.[1] The withheld documents are the subject of this discovery order.

Plaintiff made his initial objections to several of the document requests in correspondence dated November 28, 2007. *See* Declaration of Kevin D. Hull in Support of a Protective Order ("Hull Decl."), Exh. B. Plaintiff objected to several requests seeking financial information regarding plaintiff and companies owned or controlled by him, and requested that defendants withdraw them as "unnecessarily invasive into the privileges and privacy rights of Mr. Saca and [his companies]." *Id.* Defendant responded by letter dated December 5, 2007, and

---

[1] As set forth in defendants' papers, plaintiff did not produce the documents until plaintiff's deposition was already two hours underway. The documents were numerous and unidentified, and were unaccompanied by a copy of the privilege log filed that same day as an exhibit to this motion. The timing of that production, in light of plaintiff's earlier and frequent complaints that defendants failed to produce documents sufficiently in advance of depositions and without privilege logs, is disappointing. In ruling on plaintiff's earlier motions which complained of similar last minute document productions, the court stressed the efficiency of producing documents to be discussed at a deposition in advance of the deposition, and has modified orders to reschedule depositions in order to allow plaintiff time for such pre-deposition review. Furthermore, as plaintiff's counsel is aware, a privilege log is not simply a document to be filed with the court in support of a motion, but that is to be timely provided to opposing counsel so that she/he may assess the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5) (description of the withheld documents must be sufficient to "*enable other parties*" to assess the claim) (emphasis added).

indicated that he would not withdraw those requests. On December 11, 2007, plaintiff filed this motion for a protective order. The court addresses each disputed request below.

## II. DOCUMENT REQUESTS

### A. Tax Returns

Document request no. 15 appended to Mr. Saca's deposition notice seeks "all income tax returns from 2002 through 2006." *See* Hull Decl., Exh. B at 4:6-7. Plaintiff objects on the basis of California's qualified tax return privilege.

Because the court's jurisdiction over this action is premised solely on diversity, and because no federal questions are presented either in the complaint or counterclaim, the court must determine substantive privileges under the state law that otherwise governs the case (i.e., California law). Fed. R. Evid. 501; *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 687 (E.D. Cal. 1993) (privileges asserted in federal question cases shall be governed by federal law, while state privilege law should apply to purely state claims brought in federal court pursuant to diversity jurisdiction).

"There is no recognized federal or state constitutional right to maintain the privacy of tax returns. California courts, however, have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns." *Weingarten v. Superior Court*, 102 Cal.App.4th 268, 274 (Cal. Ct. App. 2002) (citations omitted).

This statutory privilege is not absolute. It "will not be upheld when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved." *Weingarten*, 102 Cal.App.4th at 274 (internal citations and quotations omitted).

California courts have held that the "public policy" exception "applies only when warranted by a legislatively declared public policy," *Id*., at 274, and that the "[p]ublic policy favoring discovery in civil litigation is not, by itself, sufficiently compelling to overcome the privilege." *Fortunato v. Superior Court*, 114 Cal.App.4th 475, 483 (Cal. Ct. App. 2003).

It is not entirely clear which exception to the tax privilege defendants find applicable here.  Defendants do not assert that plaintiff has waived the privilege, nor that there is a legislatively declared public policy compelling disclosure.  Rather, defendants seem to assert that the gravamen of the lawsuit is inconsistent with the privilege.  That is, they assert that "the core of defendants' defenses and counterclaim is that because plaintiff failed to pay defendants in accordance with their contract, defendants exercised their option to cease work until plaintiff agreed to pay the remaining amounts."  Defs.' Supp. Opp'n, at 5:25-27.  Defendants claim that the "information contained in plaintiffs' tax returns will likely show whether plaintiff was financially capable of making the required payments, an essential component to defendants' case and affirmative defenses."  *Id.*, at 6:1-3.

Although the tax returns may indeed be relevant evidence regarding plaintiff's ability to make the required payments, it is not the only such evidence of plaintiff's ability to pay during the relevant time periods.  The claims and defenses in this case do not directly implicate plaintiff's tax returns, and as such, the assertion of the privilege is not "inconsistent with the gravamen of the lawsuit."  *Cf. Wilson v. Superior Court*, 63 Cal.App.3d 825, 829 (Cal. Ct. App. 1976) (finding assertion of the tax return privilege inconsistent with the gravamen of the lawsuit where plaintiff sued his accountant for faulty tax advice); *Newson v. City of Oakland*, 37 Cal.App.3d 1050, 1055 (Cal. Ct. App. 1974) (privilege inconsistent with claims of lost income); *see also Young v. United States*, 149 F.R.D. 199, 205 (S.D. Cal. 1993) (plaintiff waives any tax return privilege to the extent a plaintiff places tax records in issue by making a claim for lost income).  Accordingly, the court finds that plaintiff has properly asserted the tax return privilege and the protective order is granted as to request for production no. 15.

B. Secured Transactions

Document request no. 16 appended to Mr. Saca's deposition notice seeks "all documents relating or referring to any secured transactions ('secured transactions' shall mean any transaction based upon a security agreement that concerns a security interest, whereby personal

4

1 or real property is pledged as collateral for performance or for a debt) you signed from 2001 to
2 present.)" Hull Decl., Exh. B at 4:9-12. "You" is defined as "you, your agents, your employees,
3 your INSURANCE companies, their agents, your attorneys, your accountants, your investigators
4 and anyone else acting on your behalf." *Id.*, at 2:12-14.

5     Plaintiff objects to this request on grounds that it is overbroad and that it seeks
6 information that is "unnecessarily invasive of plaintiff's privacy rights." With regard to
7 overbreadth, defendants acknowledged at the hearing that it could be more narrowly tailored to
8 address the subject matter of the lawsuit, i.e., the contract between the parties. As drafted, this
9 request seeks information regarding secured transactions made more than two years before the
10 contract in this case was even contemplated by the parties. *See* Compl., Exh. A (contract signed
11 in September 2003). Further, the request encompasses potentially all secured transactions signed
12 by Mr. Saca, either on his own behalf or on behalf of his several companies, that presumably
13 have no bearing on the subject matter of this lawsuit.

14     Accordingly, the court instructs defendants to redraft this request so that it is more
15 narrowly tailored to the time period and subject matter at issue in this lawsuit. The court
16 reserves ruling on any privacy objections pending the redrafting of this request. However, as
17 noted below, the court is not inclined to find that privacy interests concerning Mr. Saca's ability
18 to pay under the terms of the contract outweigh the public policy favoring discovery in litigation.

19     C. Payments by Third Parties

20     Document requests nos. 38, 39, and 40 each seek documents relating or referring to
21 payments made by non-parties Saca Development and Saca Builders on behalf of plaintiff "for
22 any reason." Hull Decl., Exh. B, at 6:25-7:6. The request as to Saca Development seeks such
23 documents from 2000 to present (request no. 38),[2] and the request as to Saca Builders seeks such
24 ////

---

[2] Confusingly, request no. 40 seeks the same information as request no. 38, but for a period from 2002, rather than 2000, to present.

5

documents from 2002 to present (request no. 39).[3]

Plaintiff objected to these requests, arguing that they unnecessarily invade the privacy rights of plaintiff and the various business entities.[4] Plaintiff also argues that disclosing such information will necessarily implicate the tax return privilege. However, plaintiff has failed to convince the court that producing information concerning payments made by these entities on behalf of plaintiff necessarily requires him to produce his tax returns. The court finds the tax privilege inapplicable to these documents.

Regarding plaintiff's objections on the basis of privacy, the court balances those interests with the needs of the litigation.

The right of privacy in California extends to financial privacy in litigation, but is "subject to balancing the needs of the litigation with the sensitivity of the information/records sought." *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999) (citing *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (Cal. 1975)). "Balancing of competing interests is underscored by the overall balancing provisions contained within Rule 26(b), Federal Rules of Civil Procedure. This Rule allows the court on its own initiative to limit discovery based, *inter alia*, on the needs of the case, the importance of the issues at stake, and undue burden." *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 698 (E.D. Cal. 1993).

California's broad discovery statutes recognize "the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings." *Britt v. Superior*

---

[3] For the first time at the hearing, plaintiff objected that these requests should have been propounded on the third party entities themselves, via a Rule 45 subpoena. The court advised plaintiff that defendants were entitled to seek any information Mr. Saca may have in his possession relating to these entities under Rule 30, but agreed that defendants were able to seek relevant information pursuant to Rule 45 if they deem that to be an appropriate course of action.

[4] The court recognizes that plaintiff's inclusion of a punitive damages claim in the complaint places defendants' financial condition at issue. *See Oakes v. Halvorsen Marine, Ltd.*, 179 F.R.D. 281, 286 (C.D. Cal. 1998). Even so, the court finds it rather ironic that plaintiff now holds closely to his chest the same kinds of financial information he has managed to obtain from defendants.

*Court*, 20 Cal.3d 844, 857 (1978). "When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced." *Valley Bank of Nevada*, 15 Cal.3d at 657.

The privacy rights of businesses are accorded even less weight under California law. Corporations do not have a right to privacy under article I, section 1 of the California Constitution. *Roberts v. Gulf Oil Corp.*, 147 Cal.App.3d 770, 795 (Cal. Ct. App. 1983); *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1504 (Cal. Ct. App. 2007). The extent of privacy rights enjoyed by other business entities is less clear, but such rights are much less robust than those enjoyed by individuals. S*ee Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court*, 137 Cal.App.4th 579, 594 (Cal. Ct. App. 2006) (noting weaker rights of business entities and affirming order compelling LLP to produce documents that were otherwise discoverable under relevancy standards).

Here, defendants claim a need for information concerning payments made by the above-described business entities on behalf of plaintiff in order to rebut plaintiff's allegations concerning the extent of his damages. More specifically, defendants note that some of plaintiff's payments under the contract were made by the various entities. *See* Defs.' Supp. Opp'n, Exh. A. Defendants challenge plaintiff's attempt to recover for himself the amounts paid by these entities. Defendants are entitled to discovery such information. Fed. R. Civ. P. 26(b). However, defendants fail to explain how payments by these entities on behalf of plaintiff, if any, prior to September 2003, have any bearing on this lawsuit.

In an effort to balance plaintiff's privacy interests with the needs of the litigation, the court orders defendants to redraft requests for production nos. 38 through 40 so that they are more narrowly tailored to the subject matter of the lawsuit and the purported reasons for propounding them.

The court otherwise overrules defendants' objections to these requests on the basis of privacy. On balance, defendants' need for the requested information outweighs plaintiff's and

the business entities' privacy interests. However, in consideration of the sensitive nature of the requested financial information, the court orders that the terms of the previously-entered stipulated protective order shall apply equally to plaintiff's production of documents following service of the redrafted discovery requests.

To the extent plaintiff intends to reassert objections to production of plaintiff's financial information, the court reiterates that it is disinclined to order that such discovery not occur at all. Although plaintiff's complaint is distinguished by inclusion of a claim for punitive damages, which claim requires evidence of defendants' financial condition, s*ee Oakes v. Halvorsen Marine, Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998), plaintiff's financial condition is not wholly irrelevant.

For example, at the hearing, defendants argued that one of their defenses to plaintiff's lawsuit is plaintiff's alleged anticipatory breach of the contract. The court has reviewed defendants' answer and counterclaim and fails to see where that legal theory is plead either as a defense or as a separate cause of action against plaintiff. However, it does appear that plaintiff has plead anticipatory repudiation in his answer to defendants' counterclaim. *See* Answer to Counterclaim, 4:12-19. More specifically, plaintiff alleges that defendants are barred from claiming breach of contract based on defendants' repudiations. *Id*.

"Although an anticipatory breach or repudiation of a contract by one party allows the injured party to sue for damages without performing or offering to perform his or her own obligations, that party cannot recover damages without presenting evidence sufficient to establish that, but for the breach, he or she was ready, willing and able to perform as required by the contract." *Ersa Grae Corp. v. Fluor Corp*., 1 Cal.App.4th 613, 627 (Cal. Ct. App. 1991) (rejecting contention that proof of the plaintiff's ability to perform is limited to actions for specific performance).

Thus, to the extent plaintiff's defense to the counterclaim is based on defendants' alleged repudiation of the contract, defendants are entitled to discover evidence relevant to plaintiff's

8

ability to perform, which in this case implicates plaintiff's ability to pay.  Accordingly, the court admonishes the parties to attempt to cooperate in completing discovery, to avoid propounding oppressive and marginally relevant requests, and to work toward agreeing to disclosing sensitive information pursuant to a mutually agreeable, and mutually applicable stipulated protective order.  The court further encourages the parties to consider the costs of filing weekly discovery motions versus litigating (or settling) this case on the merits.

**III. CONCLUSION**

In accordance with the foregoing, IT IS ORDERED that:

1. Plaintiff's motion is granted in part and denied in part.

2. The motion for a protective order is granted as to request for production no. 15 seeking "all income tax returns."

3. The motion is denied without prejudice as to requests for production nos. 16, and 38-40.  Defendants are ordered to redraft those requests consistent with this order, and serve them promptly on plaintiff.  Within twenty days of receipt of the redrafted requests, plaintiff shall provide responses thereto.  Plaintiff's production of documents shall be governed by the terms of the previously-entered stipulated protective order, which, by this order is modified to apply reciprocally to plaintiff's production.

DATED: January 3, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE